IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CAED BRAWNER,

    Plaintiff,

v.

                                                                CASE NO. 4:11-CV-247-MP-GRJ

BUSS, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a Florida Department of Corrections (DOC) inmate, initiated this case by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff has also filed a supplement in support of the complaint (Doc. 4) which includes documents pertaining to his grievances. Plaintiff has moved for leave to proceed as a pauper (Doc. 2). Upon consideration of Plaintiff's claims, it is recommended that this case be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

## Plaintiff's Allegations

Plaintiff alleges that on October 6, 2009, he was injured while playing basketball at Liberty C.I., and his "head was split open extremely bad and his shoulder was visibly dislocated." Plaintiff lost consciousness for a brief period of time and was subsequently transported to the prison emergency room. Plaintiff received 5 stitches to his head, Vicodin for pain, and remained in the infirmary for three days. Plaintiff states that while at the infirmary he was still in pain despite the Vicodin, was sweating profusely, and could not hold down meals. After two days, Defendant Dr. H. Hercule saw Plaintiff. X-

rays of Plaintiff's right shoulder were performed.  Plaintiff alleges that he could not lift his arm without extreme pain and his shoulder giving out, and that the end of his collarbone was visibly bulging.  Plaintiff contends that Dr. Hercule said nothing was wrong according to the x-ray and provided him with a sling.  Plaintiff alleges that he complained of "excruciating" pain and was told by Dr. Hercule that the pain would eventually subside and that Plaintiff would be sent to Lake Butler Regional Medical Center for an MRI.  Plaintiff was discharged from the infirmary after three days, allegedly without a prescription for any pain medication.  (Doc. 1).

Plaintiff alleges that upon release from the infirmary, his pain was still excruciating, he had migraine headaches, and he repeatedly accessed sick call for his head and shoulder.  Plaintiff alleges that his mother spoke to Dr. Hercule, who informed her that the x-ray results showed an AC separation (Type II) to Plaintiff's shoulder. Plaintiff alleges he was denied the opportunity to go to Lake Butler until finally, after multiple sick call visits, he was permitted to sign the consent form to go to Lake Butler. Plaintiff alleges that Dr. Hercule "disagreed with sending Plaintiff to Lake Butler" and mocked his pain complaints.  Plaintiff also alleges it was only after several sick calls that Defendant Salvador prescribed him Excedrin for his headaches, and even though her prescription stated refills would be issued, he did not receive refills or any migraine medication.

Plaintiff alleges that he was eventually taken to Lake Butler RMC and seen by a physician.  Plaintiff alleges that the doctor did not review any x-rays and told him that he could perform a surgery where he would shave the end of Plaintiff's collar bone and remove a disk from his right shoulder.  Plaintiff suggested the doctor re-attach the torn

ligaments instead, and alleges that the doctor told him it was not up for discussion. Plaintiff said no "head scans" were taken at Lake Butler RMC.  Plaintiff does not indicate whether he ever pursued the surgery offered by the doctor at Lake Butler RMC. Plaintiff alleges that his shoulder is permanently disfigured and he continues to suffer from pain and migraine headaches.

Plaintiff alleges that the foregoing facts demonstrate deliberate indifference, cruel and unusual punishment, and inadequate medical treatment. Plaintiff states claims of deliberate indifference against Defendants Hercule and Salvador; alleges that all Defendants violated the Florida Constitution; and asserts a tort claim against each Defendant under Fla. Stat. 768.28(a)(1)(9).[1]  Plaintiff seeks $40,000,000 in compensatory damages; $850,000 in punitive damages; $300,000 for mental anguish; adequate medical treatment; and lifetime compensation for permanent damages, in monthly payments (Doc. 1).

## Standard of Review

Pursuant to 28 U.S.C. § 1915(e)(2), "notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a

---

[1]This particular subdivision of the statute does not exist; however, it appears Plaintiff also wishes to assert tort claims against each Defendant related to his "ongoing and lingering pain," and "permanent disfigurement."  (Doc. 1)

*Case No: 4:11-cv-247-MP-GRJ*

right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951-53 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.").

A *pro se* litigant's allegations are entitled to the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998) (*overruled on other grounds* by *Iqbal*).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with

attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'") ( quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); Chance *v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper

treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

## Discussion

Even if Plaintiff's allegations, liberally construed, establish that his headaches and shoulder injury gave rise to an objectively serious medical need, he has not alleged a deprivation of that need that is cognizable under the Eighth Amendment.  Plaintiff alleges that he was taken to the prison emergency room shortly after his accident and was given stitches and Vicodin pain medication.  Plaintiff remained in the infirmary for three days (under the care of healthcare providers) and received x-rays.  Dr. Hercule determined that a sling was appropriate based on the x-rays.  Plaintiff alleges that he was then seen at sick call numerous times and prescribed Excedrin for his headaches.  Plaintiff was later sent to Lake Butler RMC, where a physician examined him and recommended surgery.

Although Plaintiff complains that prison medical personnel should have provided different treatment during this time, the decision as to the type of treatment that is provided is a "classic example of a matter for medical judgment," that does not provide a basis for Eighth Amendment liability.  *Estelle* 429 U.S. at 107 ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment.").  Even if Plaintiff had an actionable claim against Defendants Hercule or

Salvador for medical malpractice under state law, this is insufficient to establish an Eighth Amendment violation. *Taylor v. Adams*, 221 F.3d at 1258. Plaintiff's desire for a different treatment reflects a disagreement with the medical judgment of Defendants Hercule and Salvador, but provides no basis for Eighth Amendment liability.

Accordingly, the Court concludes that the allegations of the complaint fail to state an Eighth Amendment claim upon which relief may be granted.

It is respectfully **RECOMMENDED** that:

1.  This case be **DISMISSED** pursuant to 28 U.S.C § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Because Plaintiff has failed to state a claim for a constitutional violation, this Court does not have jurisdiction to entertain his tort claims against Defendants.

2.  Plaintiff's motion for leave to proceed informa pauperis (Doc. 2) be **GRANTED** for the limited purposes of screening his claims.

**IN CHAMBERS**  this 10$^h$ day of October 2011.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

*Case No: 4:11-cv-247-MP-GRJ*